UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JONATHAN W. DUBEE,

                Plaintiff,

   -against-                                         8:12-CV-1213 (LEK/TWD)

DONALD SCAMMELL; DON
SCAMMELL, INC.; and DON
SCAMMELL, INC. EMPLOYEE STOCK
ACCUMULATION AND RETENTION
PLAN,

                Defendants.

## MEMORANDUM-DECISION and ORDER

**I.    INTRODUCTION**

In this employee-benefits case, Plaintiff Jonathan W. Dubee ("Plaintiff") claims that Defendants Donald Scammell ("Scammell"), Don Scammell, Inc. ("the Company"), and the Don Scammell Inc. Employee Stock Accumulation and Retention Plan ("the Plan") (collectively, "Defendants") violated the terms of the Plan by not allocating Plaintiff sufficient shares of Company stock and by undervaluing those shares that Plaintiff was awarded. See generally Dkt. No. 7 ("Amended Complaint"). Plaintiff brings claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., federal common law, and state law. Id. Presently before the Court are Defendants' two Motions to dismiss. Dkt. Nos. 6 ("First Dismissal Motion"); 14 ("Second Dismissal Motion"). Both seek dismissal of Plaintiff's state-law claims as preempted by ERISA, while the Second Dismissal Motion also seeks to: (1) strike Plaintiff's Amended Complaint for non-compliance with Local Rule 7.1(a)(4); and (2) dismiss Plaintiff's federal-common-law claims as precluded by ERISA. Id. For the reasons that follow, the First

Dismissal Motion is denied, the Second Dismissal Motion is denied in part, and leave is granted for additional briefing regarding whether all of Plaintiff's federal claims should be dismissed because the Plan is not an ERISA plan.

## II. BACKGROUND[1]

Plaintiff was employed by the Company, a beer distributor. Am. Compl. ¶¶ 8, 10. In 2005, the Plan was established to "reward and retain key employees and . . . to further align the interest of key employees with the interests of the Company's shareholders." Id. ¶ 11, id. Ex. A ("Plan Document") § 2.1.[2] The Plan was to be administered by a compensation committee ("the Committee") appointed by the Company's board of directors ("the Board"). Plan Doc. § 7.2 Plaintiff and two other Company employees were the Plan's original participants, although other participants could be added at the discretion of the Committee as long as they fell "within a 'select group of management or highly compensated employees' as this term is defined in Title I of ERISA." Id. § 3.1. The Plan provided that, from 2005 to 2012, half-shares of Company common stock would be allocated to each participant's individual account. Id. § 4.1. After the 2013 redemption of Scammell's stock pursuant to a separate stock-redemption agreement, sufficient additional shares were to be allocated to give each participant a total of seven percent of the outstanding shares. Id.

---

[1] Because this matter is before the Court on a motion to dismiss, the allegations of the Amended Complaint are accepted as true. See Boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 408 (2d Cir. 2000); see also Matson v. Bd. of Educ., 631 F.3d 57, 72 (2d Cir. 2011) (noting that, in reviewing a motion to dismiss, a court must view a plaintiff's factual allegations "in a light most favorable to the plaintiff and draw[] all reasonable inferences in her favor").

[2] The Court may consider the Plan Document because it was incorporated by, and attached to, the Amended Complaint. Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002) (noting that, in deciding a motion to dismiss, a court can consider "documents attached to the complaint [and] documents incorporated by reference in the complaint").

2

If cash dividends were paid on Company stock, they were to be invested in "any assets the Committee in its sole discretion determines." Id. § 5.1  Allocated shares were to vest only after Scammell's stock had been redeemed and the Board had determined that there had been a "successful transition to new management." Id. § 4.2.  However, if the Board had made the successful-transition determination within one year of the redemption of Scammell's stock, participants' stock would vest regardless. Id.  Unvested shares were forfeited upon the termination of a participant's employment. Id.

Participants were to receive ten equal annual cash payments for the fair-market value of their vested stock and the value of their invested stock dividends. Id. §§ 5.1, 6.1.  Those payments were to commence when participants had both reached the age of 65 and terminated employment with the Company. Id. § 6.1.  Although the "Company anticipate[d] that it w[ould] continue the Plan for an indefinite period of time," the Company could terminate the Plan at any time. Id. § 7.6.  If it did so, participants were to immediately receive a lump-sum payment for the fair-market value of their vested stock and the value of their invested stock dividends. Id.  If a participant died before receiving all of her benefits, her beneficiaries were to receive a lump-sum payment of the remaining benefits. Id. § 6.1.

The fair-market values of shares was to be calculated according to the following "[f]ormula [m]ethod":

> Unaudited Net Book Value (assets minus liabilities) determined as of the nearest fiscal year end plus 1.5 times gross profit divided by issued and outstanding shares.  Gross profit equal to revenue minus purchase and freight and NYS's beer excise tax.

Id. Sched. B.  This calculation was to take place only once, when the payment of benefits

3

commenced.³ Id. § 6.1.

Plaintiff received a total of three shares of stock. Am. Compl. ¶ 21. In May 2011, the Company sold all of its assets and business. Id. ¶ 25. In its accounting of the sale, the Company treated half of the proceeds as received by Scammell personally in exchange for his "personal goodwill." Id. ¶¶ 26, 30. The Plan was terminated at about the same time as the sale. Id. ¶ 28. In October 2011, Plaintiff was offered partial payment for his shares—valued as if half of the sale proceeds were not a Company asset—if he signed a liability waiver. Id. ¶ 32. He refused to accept payment or sign the waiver. Id. Plaintiff's attorney subsequently sent a demand letter to Defendants' counsel, seeking both an additional stock share and a recalculation of the value of Plaintiff's account as if the entire sale proceeds had been a Company asset. Am. Compl. Ex. B ("Demand Letter").

Plaintiff then commenced this action, bringing claims under ERISA and state law for, *inter alia*, the same relief sought in the Demand Letter. Dkt. No. 1 ("Original Complaint"). Defendants filed the First Dismissal Motion and an accompanying Memorandum of law on October 5, 2012, asserting that the Plan should be deemed an ERISA plan because Plaintiff had so alleged in the Original Complaint. Dkt. No. 6-1 ("First Memorandum"). Therefore, because all of the state-law claims allegedly related to the Plan, Defendants sought dismissal of those claims on ERISA-preemption grounds. Id. Twenty-one days later, Plaintiff filed the Amended Complaint, which brought the same three ERISA claims (Claims One, Two, and Three) and seven state-law claims (Claims Four through Ten) as the Original Complaint. However, the Amended Complaint differed

---

³ A number of the Plan Document's provisions—including the requirements that the ten annual installments be in equal amounts and that benefits be paid in a lump sum upon Plan termination or a participant's death—confirm that the total amount of benefits was to be determined by a one-time calculation.

4

in that it: (1) explicitly stated that all of the state-law claims were "alternative" causes of action applicable only if the Court determined that the Plan was not an ERISA plan; and (2) added three federal-common-law claims (Claims Eleven, Twelve, and Thirteen). Am. Compl. ¶¶ 67, 100-117. Plaintiff then filed a Response to the First Dismissal Motion. Dkt. No. 8 ("First Response"). Defendants filed a Reply, in which they argued that the Amended Complaint should be stricken because Plaintiff, by not filing a motion to amend the Complaint, had not complied with Local Rule 7.1(a)(4). Dkt. No. 10 ("First Reply"). Defendants then filed the Second Dismissal Motion and an accompanying Memorandum of law, reasserting the arguments they had already raised. Dkt. No. 14-1 ("Second Memorandum"). Defendants also explicitly stated that they were not admitting that the Plan was an ERISA plan but that, because Plaintiff had alleged that it was, the Court was bound to treat it as such in ruling on the Dismissal Motions. Id. at 8. Plaintiff filed a Response, arguing that it was premature to determine whether the Plan was an ERISA plan. Dkt. No. 16 ("Second Response"). Defendants then filed a Reply. Dkt. No. 17 ("Second Reply").

Discovery commenced on December 11, 2012. Dkt No. 18. Disclosures under Rule 26 of the Federal Rules of Civil Procedure were subsequently exchanged. See Text Order, February 27, 2012. The Honorable Thérèse Wiley Dancks, U.S. Magistrate Judge, then held a status conference at which discovery issues, including disclosure of the agreement governing the sale of the Company, were discussed. Id. Defense counsel subsequently notified Judge Dancks that the sale agreement would be disclosed. Dkt No. 20. The parties also drafted and agreed to a Confidentiality agreement and protective order governing the discovery of confidential information, which Judge Dancks approved. Dkt. Nos. 22; 23 ("Confidentiality Order"). The parties then conferred and reached a "general understanding" regarding deponents. Dkt No. 24. Discovery was stayed on April 17,

5

2013, pending the Court's ruling on the Dismissal Motions. Dkt. No. 25.

### III. MOTION TO STRIKE.

Rule 15(a)(1) of the Federal Rules of Civil Procedure permits a plaintiff to amend her complaint as a matter of course within either: (1) 21 days of serving it; or (2) 21 days of the earliest-served responsive pleading or certain Rule 12 motions, including motions under Rule 12(b)(6). Otherwise, a plaintiff can amend "only with . . . the court's leave." FED. R. CIV. P. 15(a)(2). Thus, under Rule 15, a party amending its pleading as a matter of course need not move the court for leave to do so. Defendants do not dispute that, because the Amended Complaint was filed within 21 days of the First Dismissal Motion, it was an amendment as a matter of course under Rule 15(a)(1). See generally First Reply; Second Mem.; Second Reply.

Local Rule 7.1(a)(4) is entitled "Motions to Amend or Supplement Pleadings or for Joinder or Interpleader." It provides certain requirement for such motions. Id. But nothing in Rule 7.1(a)(4) indicates that a motion must accompany an amendment as of course under Rule 15(a)(1). Indeed, such a requirement would be inconsistent with Rule 15(a)(1) and would therefore contravene Rule 83(a)(1) of the Federal Rules of Civil Procedure, which prohibits local rules that are inconsistent with the Federal Rules of Civil Procedure. Defendants' Second Dismissal Motion, to the extent that it seeks to strike Plaintiff's Amended Complaint, is therefore denied.[4] The First Dismissal Motion, because it dealt only with the Original Complaint, is denied as moot.

### IV. MOTION TO DISMISS

**A. Legal Standard**

---

[4] Even if Local Rule 7.1(a)(4) did require motions for amendments as a matter of course, the Court would construe the First Response as a motion to amend and grant that motion. See First Resp. at 6 (requesting that the Court do so).

6

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also FED. R. CIV. P. 12(b)(6). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff. See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Id. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citing Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. See id. at 678-79.

**B. ERISA Preemption**

ERISA governs "employee benefit *plan[s]*." 29 U.S.C. § 1002 (emphasis added). The statute contains a broad preemption clause that applies to any state-law claim that "relate[s]" to an ERISA plan. Id. § 1144(a). To determine whether ERISA preempts Plaintiff's state-law claims, the Court must first determine if the Plan was an ERISA plan.

*1. Plaintiff's Admission*

7

Defendants argue that the Plan must be deemed an ERISA plan because Plaintiff so alleges. First Mem. at 5-6; Second Mem. at 7-8; First Reply at 3-4. Defendants finds support for this contention in the well-established principle that a plaintiff's allegations must be taken as true in deciding a Rule 12(b)(6) motion. Id. But this argument fails to distinguish between factual and legal allegations. In deciding a Rule 12(b)(6) motion, a court must "accept[] all factual allegations as true, *but giv[e] no effect to legal conclusions.*" Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir. 2010) (internal quotation marks omitted and emphasis added). Plaintiff's allegation that the Plan was an employee benefits plan under ERISA was a legal conclusion that the Court need not credit in ruling on the Second Dismissal Motion. Moreover, holding Plaintiff to his allegation would deprive him of his explicit right, under Rule 8(d) of the Federal Rules of Civil Procedure, to plead "inconsistent" claims in the alternative. Indeed, Defendants' logic would require the dismissal of any claim that is inconsistent with another claim.[5] Not only will the Court refuse to treat Plaintiff's ERISA allegations as dispositive, it will accord them no weight. However, to rule on the Second Dismissal Motion, the Court must still determine whether the Plan was an ERISA plan.[6]

---

[5] Defendants also suggest that the order of alternative claims matters. First Reply at 4. According to Defendant, because Plaintiff's state-law claims were argued in the alternative to his ERISA claims, rather than the other way around, the ERISA claims must be taken as true and the state-law claims dismissed. Id. Defendants have offered no support for this novel proposition, and its application would still prevent the pleading of inconsistent claims—those claims alleged in the alternative would always be subject to immediate dismissal.

[6] Plaintiff asserts that it is premature to make such a determination. But, as discussed *infra*, the Plan Document unambiguously demonstrates that the Plan was not an ERISA plan. In such cases, a court should not wait for discovery to determine ERISA coverage. See, e.g., Adams v. Intralinks, Inc., No. 03 Civ. 5384, 2004 WL 1627313, at *7 (S.D.N.Y. July 20, 2004); Foster v. Bell Atl. Tricon Leasing Corp., No. 93 Civ. 4527, 1994 WL 150830, at *1 (S.D.N.Y. Apr. 20, 1994) ("The issue [of ERISA coverage] is cognizable on a Rule 12(b)(6) motion; where the record contains the undisputed terms of the disputed plan, as the record here does, a Court may decide the

*2. Substantive Law*

To be an "plan" under ERISA, the disbursement of employee benefits must "require[] an ongoing administrative program." Fort Halifax Packing Co., Inc. v. Coyne, 482 U.S. 1, 11 (1987); see also Schonholz v. Long Island Jewish Med. Ctr., 87 F.3d 72, 75 (2d Cir. 1996) ("[B]oth the Supreme Court and this court have emphasized that ERISA applies only where such an undertaking or obligation requires the creation of an ongoing administrative program.").[7] The Second Circuit analyzes three factors in determining whether the creation of an ongoing administrative program is required: (1) whether a reasonable employee would perceive an ongoing commitment by the employer to provide employee benefits; (2) whether the employer's undertaking or obligation requires managerial discretion in its administration; and (3) whether the employer was required to analyze the circumstances of each employee's termination separately in light of certain criteria.

---

applicability of ERISA as a matter of law."). Moreover, Plaintiff has not pointed to any information that has been or might be obtained in discovery that would affect the ERISA-plan determination.

[7] In Tischmann v. ITT/Sheraton Corp., 145 F.3d 561, 565 (2d Cir. 1998), the Second Circuit explained the reason for the "ongoing administrative program" requirement:

> This principle flows from the policies underlying ERISA preemption: Congress intended pre-emption to afford employers the advantages of a uniform set of administrative procedures governed by a single set of regulations. For example, tasks such as determining the eligibility of claimants, calculating benefit levels, making disbursements, monitoring the availability of funds for benefit payments, and keeping appropriate records in order to comply with applicable reporting requirements, would be difficult to perform if an employer were subject to differing regulatory requirements in differing States. But this concern only arises with respect to benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation. It is for this reason that Congress pre-empted state laws relating to plans, rather than simply to benefits. Only a plan embodies a set of administrative practices vulnerable to the burden that would be imposed by a patchwork scheme of regulation.

(citing Fort Halifax, 482 U.S. 1, 9, 11-12) (citations, brackets, ellipsis and internal quotation marks omitted).

9

Tischmann v. ITT/Sheraton Corp., 145 F.3d 561, 566 (2d Cir. 1998); Schonholz, 87 F.3d at 76. No single factor is determinative. Schonholz, 87 F.3d at 76. Other factors may also be relevant. Tischmann, 145 F.3d at 566. The Court analyzes each of the three primary factors in turn.

### a. Perception of an Ongoing Commitment

The Plan Document states that the Company "anticipates it will continue the Plan for an indefinite period of time." Plan Doc. § 7.6. A reasonable employee would perceive this as an ongoing commitment to provide benefits. See Young v. CIGNA Co., No. 98 Civ. 2903, 1998 WL 895766, at *5 (S.D.N.Y. Dec. 21, 1998) (finding a reasonable expectation of continued benefits where the plan stated that the employer "expects to continue this plan indefinitely"). The Plan's commitment to provide participants with ten years of benefit payments also indicates an ongoing commitment to provide benefits, as does the possibility that different participants could receive payments at different times. See Schonholz, 87 F.3d at 76-77; Gabelman v. Sher, No. 11-CV-2718, 2012 WL 1004872, at *5 (E.D.N.Y. Mar. 23, 2012); cf. Fort Halifax, 482 U.S. at 9-15 (holding ERISA inapplicable where employer's lump-sum payment obligation to all employees would arise at "one time").

However, the Company had the authority to terminate the Plan. The existence of a plan-termination provision suggests that employees did not reasonably perceive an ongoing commitment to provide benefits. See Tischmann, 145 F.3d at 566; Schonholz, 87 F.3d at 74. The Plan's termination provision is particularly weighty because it could be invoked at any time and could, at a minimum, reduce all participants' benefits by preventing additional shares from being added to their account. Plan Doc. § 7.6; cf. Tischmann, 145 F.3d at 566 (holding that plan-termination provision did not weigh strongly against a finding that employees reasonably expected benefit continuation

where plan termination could not "reduce or adversely affect the severance benefits of any eligible employee whose employment terminates within two years of the effective date of plan termination" (internal quotation marks omitted)). The lump-sum nature of Plan-termination and death payments also weighs against a finding that there was a reasonable expectation of continued benefits. See Fort Halifax, 482 U.S. at 9-15; Schonholz, 87 F.3d at 76-77; Gabelman, 2012 WL 1004872, at *5. Moreover, the Plan Document states that there would be a "transition to new [Company] management." Plan. Doc. § 4.2. Reasonable employees might well have suspected that new management might exercise the termination clause and discontinue the Plan.

In light of the above, this factor does not weigh strongly in favor or against a determination that the Plan was an ERISA plan.

### b. Managerial Discretion

Although the three original participants were set out in the Plan Document, the Committee had "discretion" to designate additional employees as eligible to participate in the Plan. Id. § 1.7. That discretion was limited. First, because participants would not receive additional stock shares after Scammell's stock was redeemed in 2013, new participants could not be added after that date. Second, only employees "within a 'select group of management or highly compensated employees' as this term is defined in Title I of ERISA" were eligible to be made participants. Id. § 3.1 Nonetheless, within that group of employees, the Committee was free to select anyone for Plan participation. Cf. Belanger v. Wyman-Gordon Co., 71 F.3d 451, 455 (1st Cir. 1995) (finding no ERISA plan where a benefits scheme involved a "mechanical determination of eligibility"); Gunter v. Novopharm USA, Inc., No. 99 C 7496, 2001 WL 199829, at *5 (N.D. Ill. Feb. 28, 2001) (finding no ERISA plan where "there [wa]s no need to determine . . . eligibility"). However, the Committee

11

never exercised that discretion: no additional participants were ever added. Am. Compl. ¶ 16; see Child-Olmsted v. Loyola Coll., Civ. No. 04-3559, 2005 WL 1000085, at *7 (D. Md. Apr. 28, 2005) (finding benefits-eligibility determination that appeared discretionary on the face of the plan document was actually non-discretionary in light of evidence that approval was, in practice, "virtually automatic"); see also Fort Halifax, 482 U.S. at 11-12 (holding that an ERISA plan exists only where an ongoing administrative program is "required").

The Plan also permitted the Committee to invest cash dividends paid on Company stock in "any assets the Committee in its sole discretion determines." Plan Doc. § 5.1. The potentially ongoing need to exercise that discretion and determine which assets to invest in weighs in favor of finding that the Plan was an ERISA plan. See Cecil v. AAA Mid-Atlantic, Inc., 118 F. Supp. 2d 659, 664 (D. Md. 2000) (finding a benefits scheme to be an ERISA plan where company was required to "manage [the employee's] accounts"). However, the investment of dividends was a peripheral, contingent aspect of the Plan. See Plan Doc. § 5.1 ("*if* any cash dividends are paid on Company Stock, they shall be invested."). Thus, the need to exercise discretion and invest dividends might never arise. See Fort Halifax, 482 U.S. at 11-12 (holding that an ERISA plan exists only where an ongoing administrative program is "required"). Moreover, it appears that no dividends were paid, and thus no investment discretion was ever actually exercised. See Am. Compl. ¶ 28 (asserting that Plaintiff should have his account balance "valued by determining the fair market value of the stock"); Demand Letter (calculating the amount due to Plaintiff based solely on the value of the stock to which he was entitled); see also Peace v. Am. Gen. Life Ins. Co., 462 F.3d 437, 441 (5th Cir. 2006) (finding no ERISA plan where employer argued that "it *could* have made various discretionary decisions").

12

Some minimal discretion was also required to determine whether the vesting prerequisite of "[s]uccessful transition to new management" had been met. Plan Doc. § 4.2. However, this exercise of discretion was temporally limited: if the Board did not make the successful-transition determination within one year of the redemption of Scammell's stock, shares were automatically deemed vested.

While the eligibility and investment determinations were potentially subject to limited managerial discretion, the calculation and payment of benefits were not. The allocation of stock to participants was simple and non-discretionary: a half-share per year from 2005 to 2013, and then additional shares sufficient to bring each participant's account holdings to seven percent of the outstanding shares. Likewise, the total payment a participant was to receive was to be calculated only once for each participant according to a non-discretionary formula. The Plan also fixed the timing, amount, and form of each payment a participant received. Thus, "there [wa]s nothing discretionary about the timing, form, or amount of the payments." Gabelman, 2012 WL 1004872, at *4; see also James v. Fleet/Norstar Fin. Grp. Inc., 992 F.2d 463, 467 (2d Cir. 1993) (finding no ERISA plan where employer needed to make only "arithmetical calculations"); Tinoco v. Marine Chartering Co., Inc., 311 F.3d 617, 622-23 (5th Cir. 2002) (finding no ERISA plan where benefit amount was based on a "calculation using a fixed formula"); Eckardt v. Wiebel Tool Co., Inc., 965 F. Supp. 357, 363 (E.D.N.Y. 1997) (finding no ERISA plan where benefits were "awarded based on a predetermined formula which [did] not require any exercise of discretion"); cf. Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 736 (2d Cir. 2001) (finding that discretion was required where severance program provided that employees were to receive "*appropriate* severance pay" (emphasis added)).

13

The non-discretionary nature of the benefits calculation outweighs the contingent, limited, and never-exercised discretion involved in selecting additional Plan participants and investing stock dividends. The Court therefore determines that this factor weighs strongly against a determination that the Plan was an ERISA plan.

### c. Analysis of Termination Circumstances

Under the Plan, no analysis of the circumstances of a participant's employment termination was required. If a participant remained employed until her shares vested, she was entitled to eventual payment. If her employment was terminated for any reason, she did not. This weighs strongly in favor of finding that the Plan was not an ERISA plan. Cf. Kosakow, 274 F.3d at 706, 737 (2d Cir. 2001) (finding an ERISA plan where administrator was required to determine if employees had been terminated "for sufficient cause"); Giordano v. Thompson, 438 F. Supp. 2d 35, 42 (E.D.N.Y. 2005) (finding an ERISA plan where employer had to analyze "whether or not [each employee's] termination was voluntary, and whether or not the termination was for cause"). Moreover, no determination as to participants' post-Company employment was required. Cf. Schonholz, 87 F.3d at 74 (finding an ERISA plan where plan required determination of whether employee had made "a reasonable and good faith effort to obtain a new job comparable to his prior position"). This factor therefore weighs strongly against a determination that the Plan was an ERISA plan.

### d. Conclusion

An examination of the Plan Document in light of the three primary factors identified by the Second Circuit indicates the Plan was not an ERISA plan: although one factor does not weigh strongly in either direction, two factors weigh strongly against ERISA coverage. Thus, had

14

Defendants sought dismissal of the ERISA claims on this ground, the Court would find that the Plan was not an ERISA plan and dismiss Claims One, Two, and Three of the Amended Complaint for failure to state a claim under Rule 12(b)(6).[8] Claims Eleven, Twelve, and Thirteen of the Amended Complaint would also be dismissed, as Plaintiff's federal-common-law claims are admittedly premised on the Plan being an ERISA plan and would not be viable in light of the Court's determination that it is not. See Second Response at 11-12; O'Connor v. Commonwealth Gas Co., 251 F.3d 262, 265 n.4 (1st Cir. 2001) (affirming dismissal of federal-common-law claims upon determination that benefits scheme was not an ERISA plan).

However, Defendants did not seek dismissal of Plaintiff's ERISA claims. Although "'[a] district court has the power to dismiss a complaint sua sponte for failure to state a claim,'" Wachtler v. County of Herkimer, 35 F.3d 77, 82 (2d Cir. 1994) (quoting Leonhard v. United States, 633 F.2d 599, 609 n.1 (2d Cir. 1980)), the plaintiff must first be given "notice and 'an opportunity to be heard.'" Id. (quoting Thomas v. Scully, 943 F.2d 259, 260 (2d Cir. 1991)); see also Perez v. Ortiz, 849 F.2d 793, 797 (2d Cir. 1998). Defendants repeatedly asked the Court to determine whether the Plan was an ERISA plan. But they focused almost exclusively on Plaintiff's putatively dispositive admission of ERISA coverage and never raised the issue of whether the Plan required an ongoing administrative program. Thus, Plaintiff has not received sufficient notice and opportunity to be heard on this issue, and the Court therefore grants leave for additional briefing. Cf. Hollander

---

[8] Dismissal for lack of subject matter jurisdiction pursuant to Rule 12(h)(3) would be improper, because Plaintiff's ERISA claims are colorable. See Carlson v. Principal Fin. Grp., 320 F.3d 301, 306 (2d Cir. 2003) (holding that an ERISA claim premised on a benefits program determined not to be an ERISA plan should have been dismissed for failure to state a claim rather than for lack of subject matter jurisdiction, because the claim did not "'clearly appear[] to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . wholly insubstantial and frivolous'" (quoting Bell v. Hood, 327 U.S. 678, 682-83 (1946))).

15

v. Copacabana Nightclub, 580 F. Supp.2d 335, 343 (S.D.N.Y. 2008) (holding that *sua sponte* dismissal is appropriate where "plaintiff has had an opportunity to be heard *on the issues*." (emphasis added)).[9]

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the First Dismissal Motion (Dkt. No. 6) is **DENIED as moot**; and it is further

**ORDERED**, that the Second Dismissal Motion (Dkt. No. 14), to the extent it seeks to have Plaintiff's Amended Complaint stricken, is **DENIED in part**;[10] and it is further

**ORDERED**, that Plaintiff may, **within fourteen (14) days** of this Memorandum-Decision and Order, submit a memorandum of law of no more than **fifteen (15) pages** as to whether Claims One, Two, Three, Eleven, Twelve, and Thirteen of the Amended Complaint should be dismissed because the Plan does not require an ongoing administrative program; and it is further

**ORDERED**, that Defendant may, **within seven (7) days** of the filing of Plaintiff's

---

[9] Because the Court has not dismissed Plaintiff's ERISA claims, it need not determine whether to decline to exercise supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(c)(3). However, the Court notes that this case has been pending for more than a year, discovery has begun, significant discovery issues have been resolved, and the Court has familiarized itself with the factual and legal issues underlying Plaintiff's claims. See Nordco, A.S. v. Ledes, No. 95 Civ. 7753, 1999 WL 1243883, at *9 (S.D.N.Y. Dec. 21, 1999) (exercising supplemental jurisdiction where "the parties . . . engaged in a substantial amount of discovery and pre-trial work" and the court had become "familiar with the facts"); cf. Dellutri v. Vill. of Elmsford, 895 F. Supp. 2d 555, 576 (S.D.N.Y. 2012) (declining to exercise supplemental jurisdiction where discovery had not yet begun).

[10] The Second Dismissal Motion seeks the dismissal of Plaintiff's state-law and federal-common-law claims on the ground that the Plan was an ERISA plan. The Court will therefore refrain from ruling on those aspects of the Motion until it determines whether the Plan was an ERISA plan.

memorandum of law, submit a response of no more than **ten (10) pages**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: August 12, 2013
       Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge